**In re CONDOR SYSTEMS, INC., a California corporation; CEI Systems, Inc., a Delaware corporation, Debtors.**

Nos. 01–55472–JRG, 01–55473–JRG.

United States Bankruptcy Court, N.D. California.

Feb. 7, 2003.

Eric E. Sagerman, Law Offices of Winston and Strawn, Los Angeles, CA, Sara L. Chentz, Robinson, Diamant & Wolkowitz, Los Angeles, CA, for Condor Systems, Inc.

Kevin M. Epstein, Office of U.S. Trustee, San Jose, CA, for Linda Eckstrom Stanley, U.S. Trustee.

Mark L. Pope, Office of U.S. Trustee, San Jose, CA, for William T. Neary, U.S. Trustee.

## ORDER GRANTING CONDOR'S MOTION TO ENFORCE THE TERMS OF AN ASSET PURCHASE AGREEMENT

JAMES R. GRUBE, Bankruptcy Judge.

### I. INTRODUCTION

Through an Asset Purchase Agreement EDO Reconnaissance and Surveillance Systems, Inc. (EDO) acquired essentially all the assets of Condor Systems, Inc and CEI Systems, Inc. (Condor). This motion resulted from a disagreement between EDO and Condor about the meaning of a certain provision in that agreement. For the reasons hereafter stated the motion will be granted.

### II. FACTUAL BACKGROUND

On June 25, 2002, the Court approved the sale of Condor's assets to EDO. Under the Asset Purchase Agreement EDO assumed various obligations of Condor. The present dispute involves the breadth of obligations to employees assumed by EDO. The assumption provision provided:

2.3 *Assumed Liabilities.* Subject to the terms and conditions of this Agreement, at the Closing, Purchaser shall assume no liability or obligation of Sellers except the following specific liabilities and obligations of Sellers (the *"Assumed Liabilities"*), which Purchaser will pay, satisfy or discharge in accordance with their terms, subject to any defenses or claimed offsets asserted in good faith against the obligee to whom such liabilities or obligations are owed:

. . . .

(e) obligations relating to Employees which Purchaser agrees to assume under *Section 6.1.*

The dispute deals with the terms of Section 6.1 which provides:

6.1 *Employees.*

. . . .

(c) As of the Effective Time, Purchaser will assume Sellers' obligations to the Transferred Employees and to Kent Hutchinson with respect to paid personal time off (PPTO) then accrued and outstanding and Sellers' Pre–Petition obligations *then accrued and outstanding to the Transferred Employees and Kent Hutchinson of the type described in* § 507(a)(3) of the Bankruptcy Code in excess of the amount therein specified as having priority.

More specifically, the dispute involves to what extent EDO assumed Condor's obligation "with respect to personal time off (PPTO) then accrued and outstanding . . . ." EDO believes it is only responsible for the PPTO obligations accrued pre-petition, that is those accrued up to the time the Chapter 11 petition was filed on November 8, 2001. Condor, on the other hand, believes EDO is responsible for those obligations up to the time of the closing of the Asset Purchase Agreement on July 26, 2002.

The dispute arose just at about the time the sale was to close. The parties were unable to resolve it at that time but neither wanted it to prevent the closing. They therefore entered into "Amendment No. 1 to Amended and Restated Asset Purchase Agreement." The Amendment contained the following provision:

V. *Dispute.* At the time of the Closing, a dispute (the *"Dispute"*) has arisen between Purchaser and Sellers as to whether the parties agreed under Section 6.1(c) of the Purchase Agreement that the Purchaser will assume Sellers' Post–Petition obligations to the Transferred Employ-

ees and to Kent Hutchinson with respect to paid personal time off (PPTO) accrued and outstanding at the Effective Time (the *"Postpetition PPTO"*). Purchaser and Sellers agree that Sellers may submit the Dispute to the Bankruptcy Court for resolution (it being understood that both Purchaser and Sellers reserve all of their rights with respect to the Dispute, are not waiving any such rights by agreeing to the provisions of this paragraph and neither party has the burden of proof with respect to the Dispute). In the event of a Final Determination (as defined below) that section 6.1(c) of the Purchase Agreement requires the Purchaser to assume the Postpetition PPTO, the Purchaser shall promptly reimburse Sellers for the amount of the Postpetition PPTO that Sellers may have paid at the time of the Closing. For purposes of this Amendment, *"Final Determination"* means a final judgment of a court of competent jurisdiction having the authority to determine the amount of, and liability with respect to, the Dispute and the denial of, or expiration of all rights to, appeal related thereto. The committee may be a party to the proceedings relating to the Dispute.

At time of the closing, EDO did not pay the PPTO benefits that had accrued postpetition. According to Condor, as of the closing of the sale, employees had accrued approximately $328,634.94 in earned and unpaid post-petition PPTO. Condor paid this obligation when EDO refused to do so. This motion then followed.

## III. LEGAL STANDARD

The question presented is whether the Court can consider parol evidence to determine the meaning of the language in question.

 The Asset Purchase Agreement provides that it shall be governed and construed under the laws of the State of New York. New York law requires a contract to be enforced according to the plain meaning of its clear and unambiguous terms so as to give effect to the intent of the parties. *Matter of Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548, 634 N.Y.S.2d 669, 658 N.E.2d 715 (N.Y.1995).[1] Ascertaining whether the language of a contract is clear or ambiguous is a question of law to be decided by the court. *Lucente v. International Bus. Mach. Corp.*, 310 F.3d 243, 257 (2d Cir.2002).

 If the language of a contract is unambiguous, parol evidence is not admissible. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992). If a contract is unambiguous, a court is required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning. Courts have cautioned that "[t]he language

---

**1.** The New York Court of Appeals has explained the parol evidence rule as follows: A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing. That rule imparts "stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses[,] ... infirmity of memory ... [and] the fear that the jury will improperly evaluate the extrinsic evidence."
*W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990) (citations omitted).

of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.' " *Id.*

■ Under New York Law, in order to apply the parol evidence rule the court must employ a three-step inquiry:

(1) determine whether the written contract is an integrated agreement; if it is,

(2) determine whether the language of the written contract is clear or is ambiguous; and,

(3) if the language is clear, apply that clear language.

*Municipal Capital Appreciation Partners, I, L.P. v. Page,* 181 F.Supp.2d 379, 392 (S.D.N.Y.2002).

■ An integrated contract is one which "represents the entire understanding of the parties to the transaction." *Id.* Under New York Law, a contract which appears complete on its face is an integrated agreement as a matter of law. *Battery Steamship Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 n. 3 (2d Cir.1975). Here, this Agreement along with the "Amendment No. 1" appear complete and should be considered integrated.

■ However, the question remains about whether the Agreement is ambiguous. Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement ...." *Lucente,* 310 F.3d at 257 (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993)). "[T]he 'tests to be applied [to determine intent] ... are common

speech ... and the reasonable expectation and purpose of the ordinary business [person],' in the factual context in which the terms of art and understanding are used, often also keyed to the level of business sophistication and acumen of the particular parties." *Uribe v. Merchants Bank of N.Y.,* 91 N.Y.2d 336, 341, 670 N.Y.S.2d 393, 693 N.E.2d 740 (N.Y.1998) (citations omitted).

## IV. DISCUSSION

■ Condor seeks an order that requires EDO to reimburse Condor for the post-petition PPTO it paid. Based on the argument presented at the hearing on January 9, 2003, EDO essentially argues that the phrase "paid personal time off" unambiguously includes only pre-petition PPTO and does not include accrued post-petition PPTO benefits. The Court disagrees and concludes the term "paid personal time off" unambiguously applies to both pre- and post-petition PPTO without any distinction.[2]

The Court comes to this conclusion after reviewing the Agreement and based on the following. EDO's interpretation of the phrase "paid personal time off" is strained and fails to comply with notions of common speech and reasonable expectations of an ordinary businessperson. The phrase "paid personal time off," interpreted according to its common usage and to the reasonable expectations of an ordinary businessperson, would mean a vacation/sick-leave benefit. The plain meaning of this phrase, by its self, does not have any pre-or post-petition implications.

In addition, in the "Definitions" section of the Agreement the words "pre-petition" and "post-petition" are defined. This section states, "As used in this Agreement, the following terms shall have the respec-

---

**2.** For this reason the court will not consider any extrinsic evidence offered by the parties.

tive meanings ascribed to them in this Section." According to the Definitions section, "pre-petition" means, "as to any matter, agreement or other item, that such matter, agreement or other item arose or was entered into prior to the commencement of the Cases." "Post-petition" means, "as to any matter, agreement or other item, that such matter agreement or other item arose or was entered into from and after the commencement of the Cases." The parties were obviously aware of the difference between "pre-" and "post-petition" obligations. These definitions would be superfluous if the use of a particular phrase such as "paid personal time off," could reasonably be interpreted as suggesting only pre-petition PPTO.

Moreover, in different sections of the Agreement, "pre-petition" and "post-petition" are specifically used to create the distinction that EDO argues is implicit in the use of the phrase "paid personal time off." For example, the parties agree that Section 6.1(c) covers two separate obligations. Under the first obligation, EDO assumed Condor's "obligations to the Transferred Employees and to Kent Hutchinson with respect to paid personal time off (PPTO) then accrued and outstanding." Under the second obligation in Section 6.1(c), EDO assumed Condor's "*Pre–Petition* obligations then accrued and outstanding to the Transferred Employees and Kent Hutchinson of the type described in § 507(a)(3) of the Bankruptcy Code." (Emphasis added.) As a practical matter obligations "of the type described in § 507(a)(3)" only occur pre-petition, yet

with respect to this obligation the parties found it necessary to include the term "pre-petition" as a qualifier. It is then reasonable to assume that had EDO intended "paid personal time off" to include only pre-petition accruals it would have so qualified the obligation. Thus, because the Agreement did not explicitly state pre-petition PPTO, the intent of the parties cannot reasonably be interpreted to include an implicit pre-petition limitation.[3]

The court notes that both parties to the contract are sophisticated entities. These are defense-industry companies, which require high-level government security clearances to operate. Both were represented by very experienced and competent counsel. There is no reason to believe that lack of sophistication had any bearing on the terms used and their intended meaning.

EDO also argues that it is not obligated to reimburse Condor for the post-petition PPTO because the post-petition PPTO is not now "outstanding." This argument fails to take into account section V of "Amendment No. 1." By that amendment EDO agreed to "reimburse [Condor] for the amount of the Postpetition PPTO that [Condor] may have paid at the time of the Closing." This amendment modifies the Purchase Agreement and as such, it sufficiently states that EDO will pay those sums paid by Condor with respect to the post-petition PPTO. The phrase "accrued and outstanding" in Section 6.1(c) is important to understanding the parties' intent at the time of the original contract; however, given the subsequent amendment, EDO

---

**3.** There exist other provisions in the contract that explicitly use the words pre-petition and post-petition in reference to the obligations EDO assumed. For example, in the Definitions section the following definition appears: *"Assumed Accounts Payable"* means, except as set forth on *Schedule 2.5(j)*, "all *Post–Petition* trade accounts payable of the

Business incurred in the ordinary course of business determined in accordance with GAAP and reflected on the books and records of Sellers with respect to the Business, plus those *Pre–Petition* trade accounts payable identified on *Schedule 1.1(a)."*
(Italicized emphasis added.)

cannot now rely on the term "outstanding" to escape liability.

## V. CONCLUSION

For the reasons stated above, Condor's motion is granted and EDO is to reimburse Condor for the post-petition PPTO obligations that Condor incurred.