OPINION OF THE COURT
 

 Ciparick, J.
 

 The question presented is whether article 17 of the ground lease between these parties is enforceable as written. We agree with the courts below that the provision at issue is unambiguous and does not lead to an absurd result or render the lease unenforceable. Thus, resort to judicial construction and extrinsic evidence is unnecessary. Accordingly, we affirm.
 

 Petitioners landlords and respondent tenant entered into a 99-year ground lease in 1960 for property located on Madison Avenue between 57th and 58th Street in the Borough of Manhattan. Tenant is the assignee of the lease. Landlord succeeded the original trustee who entered into the ground lease with tenant’s assignor. Tenant has constructed a 26-story office building on the property.
 

 The lease provided for an initial term of 33 years, with options to tenant to renew for two additional 33-year terms. The lease provided for six incremental rent increases during the initial 33-year term, with a starting rent of $100,000 annually increasing to $160,000 in 1985. The rent for the final eight years of the initial term was to be calculated at 6% of the appraised "then value” of the land, which amount was determined to be $2,100,000 in 1985.
 

 Prior to expiration of the initial term, tenant timely exercised its option to renew under article 16 of the lease, which provides that the rent amount is to be fixed by agreement between the parties or, in the absence of agreement, by an appraisal to be calculated at 6% of the "then value” of the
 
 *546
 
 land.
 
 *
 
 When the parties could not agree on a rental amount for the renewal term, tenant sought an appraisal under article 17 of the lease, which provides in pertinent part:
 

 "The party desiring * * * appraisal shall give written notice to that effect to the other party * * * except that in case of any appraisal under the provisions of Sections 16.01 or 16.02 hereof with respect to the first renewal term and the second renewal term, neither party shall give such written notice to the other party earlier than twelve (12) months prior to the
 
 expiration
 
 of any such renewal term” (emphasis added).
 

 The term "expiration” is at the heart of this dispute. If read literally, it requires that the determination of the rent amount for the first renewal term — which commenced on July 1, 1993 — take place 32 years after the term began, in 2025. The effect of postponing a determination of the rent due until 2025 is to freeze the annual rent for the first renewal term at the current amount, requiring tenant to make a lump-sum payment at the end of the first renewal term representing the difference between the amount arrived at pursuant to the retrospective appraisal and the rent actually paid during the renewal term.
 

 Landlords commenced this proceeding pursuant to CPLR 7601 to stay the appraisal on the ground that it was premature and could not be instituted until 2025 under the terms of the lease. Tenant answered, seeking reformation of the lease based upon a scrivener’s error. Supreme Court granted the
 
 *547
 
 petition to stay the appraisal, concluding that the lease was a clear and unambiguous document entitled to enforcement according to its terms. The court noted that the lease was executed and later revised by "sophisticated business people ably assisted by presumed reasonably competent counsel and competent financial advisors.” Finally, the court concluded that any claim for reformation of the lease was time-barred under the six-year Statute of Limitations of CPLR 213.
 

 The Appellate Division affirmed, with two Justices dissenting. The majority concluded that courts should not, "under the guise of interpretation, rewrite part of an agreement which is clear and explicit simply because a party’s expectation of the bargain does not materialize due to a change in economic climate.” (205 AD2d, at 206.) The majority additionally noted that article 17 of the lease was not only negotiated and drafted by experienced business people, but also "reviewed and revised by the parties a number of times.”
 
 (Id.,
 
 at 206.) The dissent opined that "this provision is so at odds with normal business practice as to render its meaning unclear”, thus necessitating a trial on the issue of the parties’ intent. (205 AD2d, at 211.) Tenant appealed to this Court as of right pursuant to CPLR 5601 (a).
 

 Tenant contends that the word "expiration” appearing in paragraph 17.01 of the ground lease is a scrivener’s error which went unnoticed from 1960 to 1993. Tenant claims that article 17.01 should not be read literally because it would give rise to dramatic inconsistencies and anomalies. Primarily, tenant complains of the fiscal uncertainties resulting from retrospective appraisal, including the prospect of belated lump-sum payments in amounts which are presently unascertainable, and resultant difficulty in selling or mortgaging its interest in the lease and setting rents when subleasing to tenants of the office building.
 

 At the outset, we note that tenant’s claim for reformation is time-barred. The six-year Statute of Limitations of CPLR 213 (6) began to run in 1960, at the time the asserted "scrivener’s error” was allegedly committed. In the absence of a claim for reformation, courts may as a matter of interpretation carry out the intention of a contract by transposing, rejecting, or supplying words to make the meaning of the contract more clear
 
 (see, Castellano v State of New York,
 
 43 NY2d 909, 911). However, such an approach is appropriate only in those limited instances where some absurdity has been
 
 *548
 
 identified or the contract would otherwise be unenforceable either in whole or in part
 
 (see, e.g., Castelli v Burns,
 
 156 App Div 200).
 

 " 'It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed’ ”
 
 (Breed v Insurance Co.,
 
 46 NY2d 351, 355, quoting
 
 Morlee Sales Corp. v Manufacturers Trust Co.,
 
 9 NY2d 16, 19). Thus, "clear, complete writings should generally be enforced according to their terms”
 
 (W.W.W. Assocs. v Giancontieri,
 
 77 NY2d 157, 160). This "sensible proposition of law”, which we reaffirm today, imparts " 'stability to commercial transactions by safeguarding against fraudulent claims, perjury, death of witnesses * * * [and] infirmity of memory’ ”
 
 (id.,
 
 at 162, quoting Fisch, New York Evidence § 42, at 22 [2d ed]). The rule has even greater force in the context of real property transactions, "where commercial certainty is a paramount concern”
 
 (id.),
 
 and where, as here, the instrument was negotiated between sophisticated, counseled business people negotiating at arm’s length
 
 (see, Chimart Assocs. v Paul,
 
 66 NY2d 570, 574).
 

 The question whether a writing is ambiguous is one of law to be resolved by the courts
 
 (see, Van Wagner Adv. Corp. v S & M Enters.,
 
 67 NY2d 186, 191;
 
 Sutton v East Riv. Sav. Bank,
 
 55 NY2d 550, 554). The rules governing the construction of ambiguous contracts are not triggered unless the court first finds an ambiguity
 
 (see, Breed, supra,
 
 at 355). We conclude that article 17 as written is not unenforceable and does not create an absurd result. Considered in isolation or in the context of the ground lease as a whole, article 17 is clear and complete and allows for the implementation and enforcement of its terms. While the retrospective appraisal mechanism may be novel or unconventional, this does not warrant an excursion beyond the four corners of the document
 
 (see,
 
 4 Williston, Contracts, § 610A, at 513 [3d ed] ["it is not the function of the judiciary to change the obligations of a contract which the parties have seen fit to make”]).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order affirmed, with costs.
 

 *
 

 Article 16 provides in pertinent part:
 

 "during said first renewal term the net annual rental * * * shall be a sum agreed upon by the Landlord and the Tenant or, in the case of their failure to agree, a sum per annum equivalent to six per centum (6%) of the then value of the land (said land being considered as vacant and unimproved) as fixed and determined by appraisal under the provisions of article 17, hereof, but in no event less than a sum per annum equivalent to the net annual rental at the rate payable immediately prior to the expiration of said original term. * * *
 

 "If at the commencement date of any renewal term the amount of the net annual rental payable during such renewal term under this article 16 shall not have been determined, then until such determination the Tenant shall continue to pay the net annual rental thereafter becoming due and payable at the rate payable immediately prior to the commencement of such renewal term,
 
 provided
 
 that within fifteen (15) days after the determination by the appraisers of the net annual rent, the Tenant shall pay to the Landlord the difference, if any, between the rent theretofore paid at said rate and the rent as fixed by appraisal.”