[980 NE2d 945, 957 NYS2d 280]

JADE REALTY LLC, Respondent, v CITIGROUP COMMERCIAL MORTGAGE TRUST 2005-EMG et al., Appellants, et al., Defendant.

Argued October 9, 2012; decided November 19, 2012

**APPEARANCES OF COUNSEL**

*Zeichner Ellman & Krause LLP*, New York City (*Jantra Van Roy* and *Michael E. Sims* of counsel), for appellants.

*Greenberg Freeman LLP*, New York City (*Michael A. Freeman* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

On September 17, 2003, Jade Realty LLC, the owner and operator of a shopping center in Hartsdale, New York, closed on a mortgage loan with Emigrant Securities Corp. in the principal amount of $4 million as part of a refinancing of an earlier loan. The loan had a 10-year term with a maturity date of October 1, 2013 and had an interest rate of 5.48% per year (Note Rate).

Although the promissory note permitted Jade to voluntarily prepay the note before its maturity date "[p]rovided an Event of Default and an acceleration of the Maturity Date ha[d] not occurred and [was] continuing," it also called for Jade to pay a "yield maintenance amount"* that varied as the note matured. As relevant here, if the note was paid within the first six loan years, the "yield maintenance amount" was to be computed "by taking the positive difference (*if any*) between the Note Rate . . . minus the current yield, *on the actual date of default under the loan* . . . of U.S. Treasury Securities having the closest longer maturity to the remaining total term of this Note," with such calculation being "made as of the *actual date of default under the loan*" (emphasis supplied). The note does not define the word "default," although the mortgage agreement contains 15 "Events of Default," none of which includes voluntary prepayment.

---

* The "yield maintenance amount" is the prepayment penalty a borrower pays a lender as a condition of prepaying a loan prior to its maturity date.

In 2005, Jade's loan was sold to Citigroup Commercial Mortgage Trust 2005-EMG, with LaSalle Bank National Association serving as trustee (collectively, Citigroup defendants). During the fourth year of the loan, Jade notified the loan servicer, Capmark Finance, Inc., that Jade intended to refinance the loan with another bank and that, because it had not defaulted on its loan, Jade did not owe a yield maintenance amount. Capmark disagreed and demanded Jade pay yield maintenance in the amount of $146,104.56.

Jade paid the amount under protest with a reservation of rights and, as relevant here, commenced this action against Citigroup defendants for breach of contract when Capmark refused to issue Jade a refund. After discovery, the parties brought their respective motions for summary judgment. Supreme Court granted the Citigroup defendants' motion to dismiss the complaint, holding that it was "absurd and illogical" for Jade to take the position that, because it had not "defaulted," it owed no yield maintenance amount (2009 NY Slip Op 32926[U], *10 [Sup Ct, NY County 2009]). Relying on this Court's holding in *Matter of Wallace v 600 Partners Co.* (86 NY2d 543 [1995]), Supreme Court held that it was within the court's purview to "transpose, reject or supply words to make the meaning of the . . . Note more clear so as to carry out the intention of the contract," and it did so by adding the words "prepayment or" before the word "default" in the yield maintenance amount formula (2009 NY Slip Op 32926[U], *10, 12 [2009]).

The Appellate Division reversed and granted Jade's cross motion for summary judgment on its breach of contract claim, holding that Supreme Court erred in rejecting Jade's argument that no yield maintenance amount was due because "[w]hile [Jade's] interpretation of the note could possibly lead to the prepayment premium being lower in the early years rather than the later years of the prepayment period, that is the way Emigrant's counsel drafted the note" (83 AD3d 567, 568 [1st Dept 2011]). It acknowledged that Jade's interpretation of the note was "technical and . . . apparently not what [Emigrant] intended," but concluded that "it is not a court's function to imply a term to save a defendant from the consequences of an agreement that it drafted" (*id.* [citation omitted]).

Citigroup defendants are not claiming that they are entitled to reformation. Absent such a claim, "courts may as a matter of

interpretation carry out the intention of a contract by transposing, rejecting, or supplying words to make the meaning of the contract more clear," but this approach is suitable "only in those limited instances where some absurdity has been identified or the contract would otherwise be unenforceable either in whole or in part" (*Matter of Wallace*, 86 NY2d at 547-548 [citations omitted]). We reject the Citigroup defendants' argument that such an approach is warranted here.

Application of the note's literal language relative to voluntary prepayment and the yield maintenance amount does not result in either absurdity or an unenforceable agreement. To be sure, Jade's interpretation of the note results in a potentially lower prepayment premium in the first six years, instead of the potentially lower prepayment premiums in the seventh through tenth years. While these terms might be "novel or unconventional," that, by itself, does not render the result here absurd (*Matter of Wallace*, 86 NY2d at 548). Citigroup received 5.48% interest for the time it held the loan and it did not lose its principal, so it could hardly be said that there is economic absurdity, as the Citigroup defendants charge (*cf. Reape v New York News*, 122 AD2d 29 [2d Dept 1986], *lv denied* 68 NY2d 610 [1986]). The note, as written, is enforceable according to its terms. A reasonable interpretation of the note is that, there having been no default on Jade's part and acceleration of the maturity date by Citigroup, there could be no "positive difference (if any)" between the Note Rate and the relevant "current yield," such that Jade owed no yield maintenance under the note.

SMITH, J. (dissenting). The result in this case is indisputably contrary to what the parties intended. They did not go to all the trouble of providing for voluntary prepayment conditioned on payment of a "yield maintenance amount" on the understanding that no yield maintenance amount could be calculated. Indeed, Jade does not say that the omission of language permitting the amount to be calculated in a non-default situation was anything but a drafting error. Jade's managing member, a sophisticated real estate lawyer, pointed out the anomaly to his brother and coinvestor in an email saying: "There is a drafting problem with the yield maintenance provision, which applies only where there is a default." In proposing to his brother the argument that Jade has now successfully made to this Court, the lawyer described it as "[c]ute but textually accurate."

The majority accepts this argument—that no yield maintenance amount is payable—because it finds that to accept it does not lead to "absurdity" (majority mem at 884). The majority does not say what it means by "absurdity." It is, beyond question, absurd to think that this result is consistent with what the parties intended: If that is not what absurdity means, what does it mean? The majority suggests that it will insist on "economic absurdity"—which, the majority says, is not present here because Citigroup receives interest on the loan and does not lose its principal (majority mem at 884). But why that justifies frustrating the parties' intention is unexplained.

Perhaps the majority's literalism could be defended if it were following a strict, consistent rule that all agreements will be enforced exactly as they are written. But the majority endorses no such rule, and it has never been the law of New York. On the contrary, cases involving clear drafting errors hold that "[t]o carry out the intention of a contract, words may be transposed, rejected, or supplied, to make its meaning more clear" (*Castellano v State of New York*, 43 NY2d 909, 911 [1978]; *see also Nash v Kornblum*, 12 NY2d 42, 47 [1962]; *Bintz v City of Hornell*, 268 App Div 742, 748 [4th Dept 1945]; *Castelli v Burns*, 156 App Div 200, 203 [1st Dept 1913]; *Potthoff v Safety Armorite Conduit Co.*, 143 App Div 161, 163 [2d Dept 1911]). In each of those cases, the Court departed from the literal words of a contract to avoid an absurd result. The majority does not attempt to explain why the result here is less absurd.

I acknowledge that I could (and probably would, if I had been on the Court) have written a similar dissent in two of our cases, *Matter of Wallace v 600 Partners Co.* (86 NY2d 543 [1995]) and *Reiss v Financial Performance Corp.* (97 NY2d 195 [2001]). In each of them, we found that the result indicated by the literal language of an agreement was not absurd, though it seems highly unlikely that the result was the one intended by the parties. This case, however, goes further than either *Wallace* or *Reiss*. In those cases, the agreements, read literally, were at least internally consistent, so that it was theoretically possible that the parties meant what they said: in *Wallace*, that the rent for a renewal term could not be calculated until decades after the term began (*see* 86 NY2d at 546-548), and in *Reiss*, that warrants to purchase stock were exercisable without adjustment to reflect a reverse stock split (*see* 97 NY2d at 198). Here, the agreement is, on its face, at war with itself: The parties expressly provided that a yield maintenance amount would be payable in the event of a voluntary prepayment, then described

the calculation of the yield maintenance amount in a way that is not applicable to that contingency.

Nothing except injustice is accomplished by reading the contract as the majority reads it. I therefore dissent.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and PIGOTT concur in memorandum; Judge SMITH dissents in an opinion.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, etc.