OPINION OF THE COURT
Acosta, J.
The primary issue in this case is whether a contract’s “notwithstanding” clause controls, where the clause would render inoperative a detailed formula in a correlated contract provision. We hold that it does. However, because plaintiffs have adduced evidence that the contract initially included a different floor price — and that defendant altered that price, perhaps due to a scrivener’s error — they should be permitted to proceed to discovery. If the error can be confirmed, plaintiffs may be entitled to reformation of the contract. At this stage in the litigation, dismissal would be premature. We therefore affirm the motion court’s denial of defendant’s motion to dismiss.
On or around June 5, 2008, two institutional affiliates of plaintiff Waterstone Capital Management, L.E (Waterstone)— among other nonparty investors — entered into a purchase agreement with defendant, GeoResources, Inc. (GeoResources). Waterstone’s affiliates are accredited investors as defined by the U.S. Securities Act of 1933. According to the purchase agreement, Waterstone purchased more than 400,000 shares of defendant’s common stock and warrants to purchase nearly 200,000 additional shares. A warrant is a contract “entitling the holder to purchase a specified number of shares of stock for a specific price during a designated time period” (Reiss v Financial Performance Corp., 97 NY2d 195, 198 [2001]).
Flaintiffs Warberg Opportunistic Trading Fund, L.E (War-berg) and Option Opportunities Corp. (OOC) — also accredited investors under federal securities law — purchased warrants in GeoResources from nonparty Warrant Strategies Fund on November 19, 2010. Those warrants are, for purposes relevant to this appeal, essentially identical to plaintiff Waterstone’s warrants.
*81 Each warrant empowered its holder with the right to purchase a specified number of shares at any time from six months after the purchase date until June 9, 2013, at an exercise price of $32.43 per share. Additionally, each warrant included anti-dilution provisions, which were intended to protect the warrant holder’s investment in the event that GeoResources paid a dividend, made a distribution, split its shares, performed a reverse stock split, or merged with another corporation.
Sections 8 (f) and 8 (h) of the warrants are the anti-dilution provisions that form the centerpiece of the parties’ dispute. Section 8 (f) contains a formula that provided for the adjustment of the exercise price if GeoResources issued or sold shares for less than the exercise price (of $32.43) or for no consideration at all. The warrants refer to such an issuance or sale as a “Trigger Issuance,” presumably because it would trigger the operation of the adjustment formula. Section 8 (h) supplies a different formula by which the number of purchasable warrant shares would be adjusted upon an adjustment of the exercise price.
At the heart of the matter is section 8 (h)’s “notwithstanding” clause, which provides a floor price. The clause reads:
“Notwithstanding any other provisions of Section 8 (f) to the contrary, no adjustment provided for in Section 8 (f) shall result in a reduction of the Exercise Price to an amount less than $32.43 per Warrant Share (as appropriately adjusted for the occurrence of any events listed in [other anti-dilution clauses of Section 8]).”
It may strike the reader as bizarre that section 8 (h) prevents the reduction of the exercise price below $32.43, the exact exercise price initially established in the warrant. It seems that the formula in section 8 (f) would never come into effect because the exercise price could never be reduced. Indeed, this is the core issue, and it will be dealt with in the discussion below.
In November 2009, and again in January 2011, GeoResources sold shares for less than the exercise price of $32.43.[1] Plaintiffs allege that both occurrences constituted trigger issuances that required defendant to adjust the exercise price and the number of warrant shares according to the formulas provided, respectively, in sections 8 (f) and 8 (h) of the warrants. Thereafter, plaintiffs requested that defendant adjust the quantity of war *82 rant shares.[2] Defendant refused to alter the exercise price or the number of warrant shares, presumably relying on the “notwithstanding” clause in section 8 (h) and claiming that the issuances did not require such adjustments.
Plaintiffs commenced the instant action on July 3, 2012, alleging that defendant breached the contract by failing to adjust the exercise price or the amount of warrant shares, and seeking damages and specific performance.[3]
Defendant moved to dismiss pursuant to CPLR 3211 (a) (1) and (7). In opposition to the motion, plaintiffs submitted, inter alia, emails dated June 6 and 9, 2008, which were sent to employees of Waterstone with an attached final form of the warrant. In that version, the “notwithstanding” clause of section 8 (h) indicated that the exercise price would not be reduced below $28.07 per warrant share (rather than the floor price of $32.43 in the other warrants). In their brief, plaintiffs argued that defendant unilaterally altered the floor price, from $28.07 to $32.43, “after the parties had reached agreement, but before hard copies of the Warrants were delivered to the original purchasers (after the closing of the Purchase Agreement).”
The motion court stated that “plaintiff has at least set forth a claim for breach of contract, which may or may not be able to be proven down the line.” Therefore, the court declined to dismiss the breach of contract claim and it allowed plaintiffs to retain their demand for specific performance.
Because this is an appeal from the denial of a motion to dismiss under CPLR 3211, we are required to “give the complaint a liberal construction, accept the allegations as true and provide plaintiffs with the benefit of every favorable inference” (Roni LLC v Arfa, 18 NY3d 846, 848 [2011]). Further, “[d]ismissal under CPLR 3211 (a) (1) is warranted only if the documentary evidence submitted conclusively establishes a *83 defense to the asserted claims as a matter of law” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal quotation marks omitted]). Applying these standards to this case, we conclude that plaintiffs have produced sufficient evidence to survive the motion to dismiss.
It is well settled that trumping language such as a “notwithstanding” provision “controls over any contrary language” in a contract (Handlebar, Inc. v Utica First Ins. Co., 290 AD2d 633, 635 [3d Dept 2002], lv denied 98 NY2d 601 [2002]; see also e.g. Bank of N.Y. v First Millennium, Inc., 607 F3d 905, 917 [2d Cir 2010] [“This Court has recognized many times that under New York law, clauses similar to the phrase ‘ (n) otwithstanding any other provision’ trump conflicting contract terms”]). This Court has likewise noted that “inconsistency provisions” — i.e. those that dictate which of two contract provisions should prevail in the event of an inconsistency — “are frequently enforced by courts” (Bank of N.Y. Mellon Trust Co., N.A. v Merrill Lynch Capital Servs. Inc., 99 AD3d 626, 628 [1st Dept 2012]).
In construing statutes and contracts, the U.S. Supreme Court has remarked that “the use of . . . a ‘notwithstanding’ clause clearly signals the drafter’s intention that the provisions of the ‘notwithstanding’ section override conflicting provisions of any other section” (Cisneros v Alpine Ridge Group, 508 US 10, 18 [1993]). Thus, the effect of a “notwithstanding” clause will prevail “even if other provisions of the contract[ ] might seem to require ... a [conflicting] result” (id. at 18-19).
Here, the “notwithstanding” provision in section 8 (h) clearly overrides any conflicting provisions in section 8 (f). To the extent that section 8 (h) sets the floor price of purchasable warrant shares at $32.43 — the initial exercise price listed in the warrant — it renders the adjustment formula in section 8 (f) impotent. To be sure, one is compelled to wonder how section 8 (f)’s formula could have any effect whatsoever if section 8 (h)’s “notwithstanding” clause prevents the reduction of the initial exercise price of $32.43 to a lower amount. Nonetheless, the “notwithstanding” clause governs the contract, despite the presence of conflicting provisions. Plaintiffs are sophisticated institutional investors, and they could have appreciated the effect of section 8 (h)’s trumping language.
Plaintiffs’ assertion that the “notwithstanding” provision leads to an absurd result, because it renders the section 8 (f) formula meaningless, is unfounded. It is true that “[a] reading of [a] contract should not render any portion meaningless” *84 (Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]). However, Sommer did not consider the effect of a notwithstanding clause, and the Court of Appeals has set a high bar for declaring a contract absurd. For example, in Matter of Wallace v 600 Partners Co. (86 NY2d 543 [1995]), a lease provision, “[i]f read literally, . . . require [d] that the determination of the rent amount for the first renewal term — which commenced on July 1, 1993 — take place 32 years after the term began, in 2025” (id. at 546). Nevertheless, the Court found that “the provision at issue . . . [did] not lead to an absurd result” (id. at 545; see also Jade Realty LLC v Citigroup Commercial Mtge. Trust 2005-EMG, 20 NY3d 881, 884 [2012] [borrower’s interpretation of note resulting in potentially lower prepayment premium for lender in first six years than in seventh through tenth years did “not render the result (t)here absurd”]). Similarly, a “notwithstanding” clause that renders a formula in a corresponding provision inoperative is not absurd. It is possible that GeoResources used boilerplate language in its warrants and simply inserted the $32.43 amount into section 8 (h) rather than deleting the entire provision in section 8 (f). The parties may very well have assented to the agreement on those terms.
Moreover, plaintiffs’ contention that section 8 (h) can be read in a manner consistent with section 8 (f) is unavailing. Even if, as plaintiffs argue, section 8 (h) “was simply intended to comply with a NASDAQ rule that limits the number of shares a company may issue without shareholder approval,” the warrants themselves contain no qualifying language to that effect. “Extrinsic evidence of the parties’ intent may be considered only if the agreement is ambiguous” (Innophos, Inc. v Rhodia, S.A., 10 NY3d 25, 29 [2008] [Internal quotation marks omitted]). “ ‘[T]he question of whether an ambiguity exists must be ascertained from the face of an agreement without regard to extrinsic evidence’ ” (Reiss v Financial Performance Corp., 97 NY2d at 199, quoting Schmidt v Magnetic Head Corp., 97 AD2d 151, 157 [2d Dept 1983]).
The warrants in this case are facially unambiguous. The “notwithstanding” clause in section 8 (h) clearly indicates that the formula in section 8 (f) cannot achieve a reduction in the exercise price below $32.43. Consequently, this Court will not look elsewhere for the provision’s meaning. Without evidentiary support in the contract itself, plaintiffs’ assertion that the trumping language in section 8 (h) was only intended to comply with a NASDAQ rule cannot be accepted.
*85 Nor can we accept plaintiffs’ argument that sections 8 (f) and 8 (h) can be reconciled by entitling plaintiffs to “recover the equivalent value that would have otherwise resulted from a change in Exercise Price under Section 8 (f)” in a different form of compensation. The warrants themselves provide no support for this claim. For example, whereas section 8 (a) provides for adjustment of the purchasable warrant shares and the exercise price only, there is no mention of an entitlement to other economic value or monetary compensation. Section 8 (b), on the other hand, includes a provision for “Transactional Consideration,” whereby the warrant holder would be entitled to “shares of stock, securities, or assets” in the event of a fundamental change in GeoResources. Yet sections 8 (f) and 8 (h), the key sections at issue here, appear only to contemplate the reduction of the exercise price and an adjustment of the number of warrant shares. Thus, there can be no other method by which plaintiffs could have been compensated under those anti-dilution provisions.
Despite the dominance of the “notwithstanding” provision in section 8 (h), the evidence that plaintiffs submitted merits denial of defendant’s motion. A court can consider evidence submitted in opposition to a motion to dismiss “to remedy defects in the complaint” (Rovello v Orofino Realty Co., 40 NY2d 633, 636 [1976]). This is because “[m]odern pleading rules are designed to focus attention on whether the pleader has a cause of action rather than on whether he has properly stated one” (id. [internal quotation marks omitted]). The email and warrant that plaintiffs submitted suggests that, at least with respect to plaintiff Waterstone, the originally agreed upon “notwithstanding” clause in section 8 (h) established a floor price of “$28.07 per Warrant Share,” not $32.43.[4] Whether plaintiffs will be entitled to reformation of the contract depends on the strength of their evidence.
Before a court will grant reformation of a contract, the party demanding this equitable remedy “ ‘must establish his right to such relief by clear, positive and convincing evidence’ ” (Schultz v 400 Coop. Corp., 292 AD2d 16, 19 [1st Dept 2002], quoting *86 Amend v Hurley, 293 NY 587, 595 [1944]). The purpose of reformation is not to “alleviat[e] a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties” (George Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 [1978]). In order to “overcome the heavy presumption” that the contract embodies the parties’ true intent, the party seeking reformation must “show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties” (id.).
In the present case, plaintiffs have set forth evidence that the trumping language in section 8 (h) of the warrants originally contained a floor price of $28.07, and that defendant unilaterally changed the price to $32.43. It is unclear whether plaintiffs contend that this alleged alteration was due to a scrivener’s error or fraud; indeed, they did not replead their fraudulent inducement claim. According to plaintiffs’ brief, they contend that “when the Purchase Agreement was signed by the original Warrant purchasers,[5] Section 8 (h) provided for a ‘floor price’ of $28.07.” The emails in the record appear to be unsigned, as defendant noted. Nevertheless, a motion to dismiss should not be granted “so long as, when the plaintiff is given the benefit of every possible favorable inference, a cause of action exists” (Rovello, 40 NY2d at 634).
It is possible that plaintiffs can adduce an executed version of the warrant that contains the alleged $28.07 floor price. If that is the case, the formula in section 8 (f) would become operative and plaintiffs would have a claim for breach of contract. At this juncture, however, it is unascertainable whether plaintiffs can meet the stringent requirements of reformation; discovery ought to reveal whether they are capable of doing so. Therefore, the motion court properly denied defendant’s motion to dismiss as to the breach of contract claim.
Lastly, with respect to plaintiffs’ demand for specific performance, defendant correctly notes that “specific performance is an equitable remedy for a breach of contract, rather than a separate cause of action” (Cho v 401-403 57th St. Realty Corp., 300 AD2d 174, 175 [1st Dept 2002]). However, plaintiffs’ plea for specific performance should not be dismissed due to the improper characterization of a type of relief as a cause of action. *87 Furthermore, “whether plaintiff may be entitled to specific performance is a matter that should be determined by the trial court on a fuller record, not on a motion to dismiss” (id.). As in Cho, “the same factual issues that remain[ ] as to plaintiffis’] breach of contract cause of action underlay plaintiffis’] plea for specific performance” (id.). Plaintiffs may yet be able to prove their breach of contract claim. Thus, the motion court properly denied defendant’s motion to dismiss with respect to plaintiffs’ specific performance “cause of action.”
Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered December 11, 2012, which, to the extent appealed from, denied defendant’s motion to dismiss the breach of contract cause of action and plea for specific performance, should be affirmed, without costs.
Tom, J.P, Saxe and Freedman, JJ., concur.
Order, Supreme Court, New York County, entered December 11, 2012, affirmed, without costs.

. GeoResources sold shares for $10.20 per share in 2009, and for $23.40 per share in 2011.

. It is unclear whether plaintiffs also demanded that defendant reduce the exercise price in accordance with the section 8 (f) formula. The complaint only alleges that plaintiffs initially asked defendant to adjust the quantity of warrant shares. However, section 8 (h)’s adjustment formula appears to only operate when an adjustment of the exercise price under section 8 (f) has already taken place.

. Plaintiffs included claims of fraudulent inducement, declaratory relief, promissory estoppel, and unjust enrichment. The motion court dismissed those causes of action, granting plaintiffs leave to replead their fraudulent inducement claim. However, plaintiffs failed to do so. Thus, the breach of contract cause of action and plea for specific performance are all that remain relevant to this appeal.

. We note that the email appears to have been sent only to employees of Waterstone and not to Warberg or OOC. Unless there is evidence to prove that the floor price error applies to all plaintiffs’ warrants, then the claims by War-berg and OOC should be dismissed because the floor price in their warrants would remain $32.43. However, that is an issue to be determined by the trial court after some discovery.

. Plaintiffs do not specify who they assert are the original purchasers, but we assume they are referring to Waterstone’s affiliates who entered into the purchase agreement with GeoResources.