OPINION OF THE COURT
Per Curiam.
Final judgment, entered August 15, 2016, affirmed, with. $25 costs.
Tenant operates a restaurant at 2637 Broadway in Manhattan. Tenant’s original lease term was from March 1, 2000 through December 31, 2009. A rider to the lease set forth a series of escalating base rents, ranging from $10,000 per month in March 2000 to $16,590.42 per month in 2009. In October 2009, the parties executed a single-page modification agreement specifying that the lease “shall be extended so that the same expires on December 21, 2019.” However, the modification only set forth the amount of monthly rent to be paid for the periods October 1, 2009 to November 30, 2011 ($12,500), and from January 1, 2012 to November 2014 ($15,000). Critically, the modification agreement did not set forth any specific rental rate, nor any methodology for a determination of the rental rate, for the five-year period from December 2014 through November 2019.
The law is clear that although the parties may intend to enter into a contract, if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result (see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989], cert denied 498 US 816 [1990]; Kolchins v Evolution Mkts., *103 Inc., 128 AD3d 47, 61 [2015]). In this case, the absence from the modification agreement of the amount of rent to be paid, or a methodology for determining the amount of rent, for the five-year period after November 2014 renders the modification agreement too indefinite to be enforced, at least with respect to the post-November 2014 period (see Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109-110 [1981] [“it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable . . . This is especially true of the amount to be paid for the sale or lease of real property”]). Indeed, it would be highly illogical or absurd to conclude that the parties intended that the commercial tenant, whose monthly rent was $10,000 in March 2000 and $15,000 in 2014, would not be obligated to pay any rent for the remaining five years of the lease.
In “limited instances where some absurdity has been identified or the contract would otherwise be unenforceable either in whole or in part,” courts may interpret a document to carry out the intention of the parties “by transposing, rejecting, or supplying words to make the meaning of the contract more clear” (Matter of Wallace v 600 Partners Co., 86 NY2d 543, 547-548 [1995]; see 1414 APF, LLC v Deer Stags, Inc., 39 AD3d 329, 331 [2007]). Given the indefiniteness and uncertainty of the underlying modification agreement, the trial court properly considered parol evidence to determine the parties’ intent (see 67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245, 248 [1975]; Ronbet 366 LLC v Tobias, 19 AD3d 102 [2005]; Korff v Corbett, 18 AD3d 248, 251 [2005]).
The trial court’s ultimate finding that “the lease modification document in question was intended to be for a five-year period and not a ten-year period and . . . that the lease expired on November 30, 2014,” comports with a fair interpretation of the evidence, particularly that reflecting the parties’ previous conduct (see Chocolas Assoc. Ltd. Partnership v Handelsman, 262 AD2d 133 [1999]). Specifically, given the parties’ practice of setting forth with great specificity and detail the annual increases in rent from the March 2000 inception of their relationship, the court could reasonably conclude that this practice would have continued to 2019, if it was intepded that the lease modification was to extend for 10 years.
The court also appropriately considered the circumstances existing when the modification was entered into and the sitúa *104 tion of the parties (see Nina Penina, Inc. v Njoku, 30 AD3d 193 [2006]), and reasonably credited the testimony of landlord’s managing member that the 2019 expiration date contained in the modification was a typographical error; that landlord would not have agreed to a 10-year extension without specifying the rent for the last five years; and that in view of tenant’s financial troubles in 2009 and the worldwide financial downturn, the parties agreed to a short extension with a reduced rent in order to assist tenant. Tenant’s contention that the 2014 rent was intended to continue through 2019 was properly rejected as being unsupported by the record and commercially unreasonable (see Sunrise Mall Assoc. v Import Alley of Sunrise Mall, 211 AD2d 711 [1995]; Bombora House, Inc. v Dufour Pastry Kitchens, Inc., 9 Misc 3d 104 [2005], affd sub nom. Geltzer v DuFour Pastry Kitchens, Inc., 34 AD3d 364 [2006]; cf. Subcarrier Communications, Inc. v Satra Realty, LLC, 11 AD3d 829 [2004]).
We have considered tenant’s remaining arguments and find them unavailing.
Lowe, III, P.J., Schoenfeld and Ling-Cohan, JJ., concur.