MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd. (2024 NY Slip Op 03376)

MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd.

2024 NY Slip Op 03376 [42 NY3d 570]

June 20, 2024

Cannataro, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

[*1]

MAK Technology Holdings Inc., Respondent,
v
Anyvision Interactive Technologies Ltd., Appellant.

Argued May 15, 2024; decided June 20, 2024

MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd., 213 AD3d 28, reversed.

{**42 NY3d at 572} OPINION OF THE COURT

Cannataro, J.

Whether or not a contract is ambiguous is a question of law to be resolved by the courts (see Matter of Banos v Rhea, 25 NY3d 266, 276 [2015]; Kass v Kass, 91 NY2d 554, 566 [1998]; W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). In deciding that question, judges must compare the competing interpretations advanced by the parties to the contractual language, which represents "[t]he best evidence" of the parties' intent (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [internal quotation marks omitted]). The ultimate inquiry is an objective one: Is the language "written so imperfectly that it is susceptible to more than one reasonable interpretation"? (Brad H. v City of New York, 17 NY3d 180, 186 [2011]; see Law Deb.{**42 NY3d at 573} Trust Co. of N.Y. v Maverick Tube Corp., 595 F3d 458, 466 [2d Cir 2010]). The purpose of these rules is to protect the parties' reasonable expectations, avoid fraud, and promote stability in commercial transactions (see Matter of Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995]; Sutton v East Riv. Sav. Bank, 55 NY2d 550, 555 [1982]).
Applying these cardinal principles of contractual interpretation to the instant appeal, we hold that plaintiff is not entitled to a $1.25 million fee for a transaction consummated eight months after the "Term" of the parties' agreement expired. Contrary to the Appellate Division's conclusion, minor syntactic and spelling errors in the [*2]preamble of an amendment to the contract cannot reasonably be read as modifying the length of the Term. We also reject plaintiff's argument that the amendment is a separate agreement with a distinct term.
* * *
Defendant Anyvision Interactive Technologies Ltd. is an Israeli company that sells facial-recognition software to businesses and governments. In 2017, defendant engaged plaintiff MAK Technology Holdings Inc. to arrange introductions with potential customers in exchange for referral payments based on the revenues generated from any resulting product-license agreements. The parties formalized their agreement in a written Referral Agreement containing a defined "Effective Date" of November 23, 2017. Section 8.1 of the agreement provides that "[t]his Agreement shall commence on the Effective Date and shall remain in force for a period of three (3) years unless earlier terminated . . . ('Term'). The Term may be extended by the written agreement of both parties."
The parties amended the Referral Agreement in January 2018 and again in August 2018 to include a compensation arrangement for equity investments in defendant, separate from their arrangement with respect to product licenses. Section 2 of each amendment begins with a preambulatory clause that no one would dispute is written in less-than-perfect English: "Each of the undersigned hereby agrees that the with affect as of the date hereof [sic] and notwithstanding anything to the contrary in the [Referral] Agreement, the Agreement shall be amended as follows" (emphasis added). Following this introductory section in the August 2018 amendment (the Second Amendment){**42 NY3d at 574}[FN1] is a list of supplemental provisions that were to be appended to the Referral Agreement as Exhibit B, including a requirement that defendant pay a referral fee to plaintiff in the event an approved investor consummated an equity investment in defendant "during the Term."
The Second Amendment is bookended by provisions emphasizing its limits and the continued effectiveness of most of the original agreement's terms. The first paragraph provides, in italicized language, "[u]nless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them under the [Referral] Agreement." In a similar vein, the last paragraph provides: "Except as specifically provided above, the [Referral] Agreement as amended hereby, shall remain unchanged as originally constituted." The parties also "agree[d] that the [Referral] Agreement and this Exhibit [B] hereto constitute the full and entire understanding and agreement between the Parties with regard to the subject matters hereof and thereof and any other written or oral agreement relating to the subject matter hereof existing between the parties is expressly canceled."
Plaintiff commenced this action to recover compensation allegedly owed under the amended Referral Agreement. As relevant here, the first cause of action alleges that nonparty Eldridge Industries Inc. (Eldridge) made an investment in defendant in July 2021 for which plaintiff is owed a $1.25 million fee under the Second Amendment. Defendant moved to dismiss this claim pursuant to CPLR 3211 (a) (1) and (7) on the ground that the transaction occurred eight months after the Term of the Referral Agreement expired in November 2020. Supreme Court denied the motion and a divided Appellate Division affirmed, both concluding that the error-infected language in section 2 of the Second Amendment creates an ambiguity with respect to the length of the Term (213 AD3d 28, 33 [1st Dept 2022]). The Appellate Division granted defendant leave to appeal, certifying the following question: "Was the order of this Court, which affirmed the order of Supreme Court, properly made?" (2023 NY Slip Op 66323[U] [1st Dept 2023]). We now reverse and answer that question in the negative.
Under the plain language of the Second Amendment, plaintiff is entitled to a fee for the July 2021 transaction only if that{**42 NY3d at 575} transaction was consummated "during the Term." Because the word "Term" is not defined in the Second Amendment, it must—in accordance with the parties' express directive—be given the meaning specifically ascribed to it in the Referral Agreement, which is a three-year period commencing on the Effective Date of November 23, 2017, and expiring in November 2020.
The muddled phrase "the with affect as of the date hereof" in section 2 of the amendment does not create a factual issue with respect to the length of the Term, because that language is susceptible to only one reasonable interpretation (see Brad H., 17 NY3d at 186). As defendant contends, and both the majority and dissent at the Appellate Division agreed, "the with affect as of the date hereof" can easily be understood to mean "with effect as of the date hereof." To reach that interpretation, one need only set aside a plainly extraneous article, the word "the," and [*3]correct a common, one-letter spelling error ("effect" versus "affect")[FN2] (see Merriam-Webster's Collegiate Dictionary 397 [11th ed 2012] ["Effect and affect are often confused because of their similar spelling and pronunciation"]; see also Banco Espírito Santo, S.A. v Concessionária Do Rodoanel Oeste S.A., 100 AD3d 100, 109 [1st Dept 2012] ["mistakes in grammar, spelling or punctuation should not be permitted to alter, contravene or vitiate manifest intention of the parties as gathered from the language employed"]). Employing this commonsense reading, section 2 has no impact on the length of the Term. The basic and essential function of the provision is to clarify when Exhibit B became effective, not alter the agreed-upon Term.
The Appellate Division held that an ambiguity exists because, in its view, " 'the with affect as of the date hereof' . . . could also be corrected to state 'with the Effective Date as the date hereof' " (213 AD3d at 34 [emphasis added]). The dissent similarly posits that the errors could be corrected to state "with the Effective Date hereof." These strained readings treat section 2 as designed to amend the Effective Date of the original agreement, the primary but unstated effect of which would be to restart its three-year Term.{**42 NY3d at 576}
We disagree that the problematic language is reasonably susceptible to such an interpretation. As written, section 2 neither references the Effective Date nor purports to amend the Term. There are no extraneous capital letters in the clause or anything else that reasonably suggests an intent to amend the Effective Date of the original agreement rather than simply to use the word "effect" or "affect." Nor does the defined phrase fit grammatically into the section unless additional words are added and subtracted on both sides.[FN3] Courts must give meaning to every word whenever possible (see IKB Intl., S.A. v Wells Fargo Bank, N.A., 40 NY3d 277, 298 [2023]). We may "transpos[e], reject[ ], or supply[ ] words to make the meaning of the contract more clear . . . only in those limited instances where some absurdity has been identified or the contract would otherwise be unenforceable either in whole or in part" (see Jade Realty LLC v Citigroup Commercial Mtge. Trust 2005-EMG, 20 NY3d 881, 883-884 [2012] [internal quotation marks omitted]). Defendant's interpretation comports with these principles by changing only those words in section 2 that cannot grammatically be reconciled with the remainder of the sentence. The alternative interpretations go much farther—they read into section 2 a redefinition of multiple unreferenced and material terms, based on nothing more than speculation as to what the parties might hypothetically have agreed to outside the four corners of their writing. Well-settled principles of contract interpretation prohibit us from entertaining an interpretation that would rewrite the parties' agreement in this manner (see Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]; Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 72 [1978]).
We must also be mindful to read a contract "as a whole to ensure that undue emphasis is not placed upon particular words and phrases" (Consedine v Portville Cent. School Dist., 12 NY3d 286, 293 [2009]). Particularly given the Second Amendment's emphasized language that "[u]nless otherwise defined, capitalized terms used herein shall have the meaning{**42 NY3d at 577} ascribed to them under the [Referral] Agreement," and its further warning that the original agreement would be "unchanged" except as "specifically provided above," no reasonable person could read the minor typographical errors in section 2 as amending the Effective Date, much less as extending the duration of the Term.[FN4]
Even putting aside the language in question, the suggestion that the parties chose to extend the Term through an elliptical reference to the Effective Date is implausible. No party has argued that it was necessary, or even important, to modify the Effective Date of the Referral Agreement in order to extend the Term or advance any other purpose of the Second Amendment. Although the commencement of the Term is tied to the Effective Date, the Referral Agreement authorizes it to be "extended by the written agreement of both parties" (emphasis added). Moreover, because the duration of the Term was a matter of multimillion-dollar importance, the parties presumably would have wanted to clearly document any agreed-upon extension.[FN5] It is not sensible to think they would have chosen to effectuate that change indirectly, using the oblique phrase "with the Effective Date as the date hereof" in a preambulatory clause, rather than by straightforwardly expressing it in Exhibit B alongside the other substantive changes listed after the words "the Agreement shall be amended as follows." It is even less conceivable, given the increased importance of section 2 under this reading, that the typographical errors and glaring omission of the critical phrase "Effective Date" would have gone unnoticed not once, but twice, in separate amendments executed seven months apart. The parties' longstanding failure to identify the error-infected language strongly suggests that neither{**42 NY3d at 578} party understood section 2 to have any impact on the duration of defendant's financial obligations.
Finally, plaintiff does not claim that it understood section 2 to amend the Effective Date at the time the amendment was executed. Indeed, the sole theory advanced in plaintiff's briefing to this Court is that the Term of the Referral Agreement is unconnected to the Effective Date, and that the Second Amendment is a wholly separate agreement with its own three-year term. Only when questioned at oral argument did plaintiff's counsel tepidly state that "the analysis by the Appellate Division was also correct." The plain language of the Referral Agreement categorically refutes plaintiff's arguments, but even beyond that, the parties' contentions suggest there is no genuine factual question to be resolved with respect to the intended meaning of section 2.
We reject plaintiff's alternative argument that it is owed a fee for the July 2021 transaction because the proceeds were "payable to [defendant]" pursuant to an earlier Eldridge investment for the reasons stated in the dissenting opinion below (see 213 AD3d at 44 [Friedman, J., dissenting]).
Accordingly, the order of the Appellate Division should be reversed, with costs, defendant's motion insofar as it sought to dismiss the first cause of action for breach of contract to the extent based on the July 2021 transaction granted, and the certified question answered in the negative.
Dissenting opinion by Troutman, J.
Troutman, J. (dissenting).
I agree with the majority on the fundamental legal principles relevant to this appeal. Ambiguity is a question of law to be resolved by the courts, and a contract
"is unambiguous if the language it uses has a definite and precise meaning, . . . concerning which there is no reasonable basis for a difference of opinion. Thus, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002] [internal quotation marks and citations omitted]).
By contrast, "[a]mbiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation" (Brad H. v City of New York, 17 NY3d 180, 186 [2011]).{**42 NY3d at 579}
I further agree with the majority that not all typographical errors, grammatical mistakes, or other obvious errors in a contract render that contract ambiguous (see majority op at 
575). Rather, the question is whether such errors render the contractual language "written so imperfectly that it is susceptible to more than one reasonable interpretation" (Brad H., 17 NY3d at 186). Under the circumstances of this case, I disagree with the majority that there is only one reasonable way to resolve the obvious errors in this contract.
As the majority explains, the original Referral Agreement (Agreement) set an "Effective Date" of November 23, 2017. In a separate provision, the Agreement defined the "Term" as commencing on the Effective Date and continuing for three years. The parties subsequently amended the Agreement twice, once in January 2018 (the January amendment) and again in August 2018 (the August amendment). Both amendments contained the following nonsensical language: "Each of the undersigned hereby agrees that the with affect as of the date hereof and notwithstanding anything to the contrary in the Agreement, the Agreement shall be amended as follows." The parties dispute whether there is more than one reasonable way to correct the obvious errors in this sentence.
The majority recognizes, as it must, that neither party's interpretation could prevail without deleting extraneous verbiage and correcting erroneous spelling. I agree with the majority that one reasonable way to correct those errors is to remove the word "the" and change "affect" to "effect," such that the phrase would read "with effect as of the date hereof" (see majority op at 
575). Altered in this manner, the corrected language would mean that the August amendment became effective as of the date that it was executed, and that it did not impact the Effective Date and therefore the Term of the Agreement.
But there are other possible, and reasonable, ways to resolve the errors. The Appellate Division concluded that the errors could be corrected to state "with the Effective Date as of the date hereof" (213 AD3d 28, 34 [1st Dept 2022]). Alternatively, the errors could be corrected to state "with the Effective Date hereof." Either of these corrections would change the capitalized Effective Date, and therefore the Term, of the original Agreement.
Notably, neither defendant nor the majority disputes that the parties could have changed the Effective Date in this manner, i.e., that doing so would render the original Agreement or{**42 NY3d at 580} the August amendment absurd or commercially unreasonable. To the contrary, there would be a logical purpose to amending the Effective Date in the subsequent amendments. The parties expressly provided in the original Agreement that the Term could be extended by the written agreement of the parties. And the January and August amendments contemplated a different financial arrangement than the original Agreement. The original Agreement pertained to fees to be paid to plaintiff for referring customers to defendant who would purchase defendant's products. The January and August amendments, by contrast, pertained to fees to be paid to plaintiff for referring equity investors to defendant. It is not absurd that the parties would wish to extend the Term of the original Agreement to allow plaintiff additional time to earn fees for referring equity investors to defendant, an arrangement that would benefit both parties.
[*4]
The majority points out that the disputed language "neither references the Effective Date nor purports to amend the Term" (majority op at 
576). Of course, if the language clearly referenced the Effective Date, we would not be debating the ambiguity of the language. Moreover, if the August amendment had clearly amended the Effective Date, doing so would amend the Term, because the Term of the original Agreement is expressly tied to the Effective Date. It is true that there are "no extraneous capital letters in the clause" (id.), but one of the errors may have been a lack of capitalization in the clause even though capitalization was intended, particularly if the drafter[FN1] was using a talk-to-text technology like dictation. That, of course, would be extraneous evidence that could not be considered unless we determine that the contract is ambiguous (see Greenfield, 98 NY2d at 569). But it is no less plausible than the proposition that these sophisticated, counseled parties clearly meant to say "with effect as of the date hereof" but simply failed to read or correct the erroneous language, twice.
It is true that the majority's proposed revision of the errors would involve fewer alterations to the erroneous language than the alternatives (see majority op at 
576 n 3). But counting how many characters would have to be changed is an arbitrary procedure for determining the true intent of contracting parties where the language the parties used is obviously erroneous. As{**42 NY3d at 581} the Appellate Division stated, this language "cannot be rendered grammatically correct without possibly altering the parties' intent" (213 AD3d at 34), regardless of how many characters the Court changes.
The majority further makes a series of presumptions about why it is "implausible" that the parties would have intended to change the Effective Date in this manner: (1) it was not necessary to modify the Effective Date in order to extend the Term of the original Agreement; (2) "because the duration of the Term was a matter of multimillion-dollar importance, the parties presumably would have wanted to clearly document any agreed-upon extension"; and (3) the errors went "unnoticed not once, but twice," suggesting that neither party understood that language "to have any impact on the duration of defendant's financial obligations" (majority op at 
577-578).
It is not our role in determining whether a contract is ambiguous to make assumptions about the parties' underlying intent. Ambiguity must be "determined within the four corners of the document," and although the contract "must be considered as a whole," we should not presume how the parties would have made their intent clear if they had written different language (Brad H., 17 NY3d at 185-186). Furthermore, the repetition of the errors in both the January and the August amendments is just as consistent with incompetence as it is with indifference.
The majority observes that plaintiff offered an alternative reading of the original Agreement and amendments that would not require the conclusion that the language was ambiguous (majority op at 
578). Plaintiff's position before this Court was not a model of clarity. Nevertheless, plaintiff's counsel clearly and repeatedly stated that if we did not agree with that alternative argument,[FN2] we should adopt the holding of Supreme Court and the Appellate Division that the language was ambiguous and may have been intended to amend the Effective Date.
Finally, the standard of review for a CPLR 3211 motion to dismiss does not appear in the majority's analysis. On a CPLR 3211 motion, "the pleading is to be afforded a liberal construction," {**42 NY3d at 582}and we must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994]). "Under CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (id. at 88). The documentary evidence relied upon by the defendant must "utterly refute[ ] plaintiff's factual allegations" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]). "A motion to dismiss based on a written agreement that contains a material ambiguity must be denied because such an agreement does not conclusively establish the asserted defense as a matter of law" (Mulacek v ExxonMobil Corp., 42 NY3d 931, 933 [May 16, 2024]).
Here, we cannot give effect to the language of the contract as written because that language is nonsensical. The obvious errors require correction, as both parties and all members of this Court agree. I do not suggest that the majority's proposed revision is incorrect, or that the alternative proposed revisions are correct or even superior. [*5]Rather, I merely conclude that the language is written so imperfectly that it is susceptible to more than one reasonable interpretation (see Brad H., 17 NY3d at 186), and that we should allow discovery to ascertain the parties' true intent. Because even the majority's analysis requires changing the written words in the parties' agreement, several reasonable jurists have disagreed about whether there is only one way to correct the errors, and this case comes before us in a motion to dismiss posture, I would deny defendant's partial motion to dismiss.[FN3]
Despite our disagreement on the correct resolution, this case will likely have little to no impact beyond these parties, this litigation, and this contract. I merely disagree with the majority about how the well-settled principles regarding contractual ambiguity should be applied to the obvious errors in this contract. One would expect that sophisticated parties such as these rarely make repeated and glaring errors in their contractual provisions that cast doubt upon their intent.{**42 NY3d at 583}
Judges Rivera, Garcia and Singas concur. Judge Troutman dissents in an opinion, in which Chief Judge Wilson and Judge Halligan concur.
Order reversed, with costs, defendant's motion insofar as sought to dismiss the first cause of action for breach of contract to the extent based on the July 2021 transaction granted, and certified question answered in the negative.

Footnotes

Footnote 1:The Second Amendment "replace[d]" and "canceled" the earlier January 2018 amendment, which contained largely similar provisions.

Footnote 2:Using underlining to show additions and striking out to show deletions, the edits required to conform section 2 to defendant's interpretation are as follows: "Each of the undersigned hereby agrees that the with eaffect as of the date hereof and notwithstanding anything to the contrary in the Agreement, the Agreement shall be amended as follows."

Footnote 3:Using underlining to show additions and striking out to show deletions, the edits required to conform section 2 to the Appellate Division's interpretation are as follows: "Each of the undersigned hereby agrees that 
the with 
the Eaffective 
Date as of the date hereof and notwithstanding anything to the contrary in the Agreement, the Agreement shall be amended as follows." The dissent's interpretation deletes as extraneous the entire phrase "as of the date" before "hereof."

Footnote 4:Even if plaintiff understood from the parties' prior negotiations that the Term would be extended, section 2 plainly did not do so; it therefore became incumbent upon plaintiff to demand clearer language (see Greenfield, 98 NY2d at 571 ["If the contract is more reasonably read to convey one meaning, the party benefitted by that reading should be able to rely on it; the party seeking exception or deviation from the meaning reasonably conveyed by the words of the contract should bear the burden of negotiating for language that would express the limitation or deviation" (internal quotation marks omitted)]; Rodolitz v Neptune Paper Prods., 22 NY2d 383, 387 [1968] ["we concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote" (internal quotation marks omitted)]).

Footnote 5:According to plaintiff, the Second Amendment was entered to resolve a dispute over referral fees under the prior amendment, which defendant considered too expensive.

Footnote 1:Plaintiff's counsel asserted that defendant's general counsel drafted the January and August amendments.

Footnote 2:Neither lower court adopted plaintiff's alternative argument, and I agree with the majority that the plain language of the original Agreement refutes plaintiff's contention that the Term was not connected to the Effective Date (see majority op at 
578).

Footnote 3:In light of that conclusion, like the Appellate Division below, I would not reach plaintiff's alternative argument that it was owed a fee for a July 2021 transaction because the proceeds of that transaction were "payable" pursuant to an earlier investment.