Atlantic Ctr. Fort Greene Assoc. LLC v City of New York (2024 NY Slip Op 5627)

Atlantic Ctr. Fort Greene Assoc. LLC v City of New York

2024 NY Slip Op 5627

Decided on November 14, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 14, 2024

Before: Webber, J.P., Singh, Gesmer, González, Scarpulla, JJ. 

Index No. 656207/21 Appeal No. 3023 Case No. 2024-01605 

[*1]Atlantic Center Fort Greene Associates LLC, Plaintiff-Respondent,
v
The City of New York, Defendant-Appellant.

Muriel Goode-Trufant, Acting Corporation Counsel, New York (Jamison Davies of counsel), for appellant.
Fried, Frank, Harris, Shriver & Jacobson LLP, New York (Janice Mac Avoy of counsel), for respondent.

Order, Supreme Court, New York County (Andrew S. Borrok, J.), entered March 6, 2024, which granted plaintiff's motion for summary judgment on its claims for declaratory relief and specific performance on the purchase option under the parties' ground lease, denied defendant's motion for summary judgment to dismiss the complaint, and dismissed defendant's counterclaims for a counter-declaration and for a declaration of rent calculated under the ground lease's escalation formula for the period following defendant's failure to close on the purchase, unanimously modified, on the law, plaintiff's motion for summary judgment denied, and otherwise affirmed, without costs.
As part of an urban renewal plan, defendant City of New York agreed to lease the premises at issue to the predecessor of plaintiff tenant. The parties negotiated a provision that 10 years into the lease the tenant would have an option to purchase for 150% of the property's fair market value, plus other expenses. On May 4, 1995, the Mayor of the City authorized such a disposition of the property. On August 4, 1995, tenant's predecessor and defendant entered into a lease agreement (the Lease) for 99 years. On September 8, 2021, tenant notified the City that it was exercising its option to purchase the premises. It asserted that the initially appraised market value continued to apply and that 150% of that value was approximately $5 million. The City contended that 150% of the fair market value of the land had risen to more than $680 million as of the date tenant exercised the option.
Tenant sued, seeking a declaratory judgment as to the fair market value component of the purchase price. The City sought a counter declaration and also filed a counterclaim for a declaratory judgment that, following the failure to close on the purchase, it was entitled to adjust the rent as scheduled in the Lease. Both parties moved for summary judgment. Supreme Court granted tenant's motion.
Under the Lease, tenant became able to exercise the purchase option on the 10th anniversary of the Rent Commencement Date. Section 12.2 (c) (i) (A) of the Lease provides that if the tenant gives the required notice of its intention to exercise the option "not later than six (6) months after a Reappraisal Date," the calculation of the purchase price must be based on 150% of the amount set forth in section 3.2 of the Lease. That section sets the "Fair Market Value" of the property for purposes of base rent.[FN1] At the relevant time, that amount was $3,446,168.00. After the expiration of the period referred to in section 12.2 (c) (i) (A), the purchase price is to be calculated by a separate appraisal. Tenant argues that "six (6) months after a Reappraisal Date" refers to the 25th anniversary of the Rent Commencement Date, when the "Fair Market Value" according to section 3.2 would first be redetermined. The City, which asks us to grant summary judgment in its favor, argues that the term refers to the conclusion of any six-month [*2]period following a Reappraisal Date.
Supreme Court improvidently granted tenant's motion for summary judgment. Tenant's argument is inconsistent with section 12.2 (c) (i) (B) of the Lease, which describes the "period referred to in Section 12.2 (c) (i) (A)" as "the six (6) month period." Tenant's interpretation effectively rewrites the lease. "Well-settled principles of contract interpretation prohibit us from entertaining an interpretation that would rewrite the parties' agreement in this manner" (MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd., — NY3d &mdash, 2024 NY Slip Op 03376, *3 [2024]). Furthermore, the Lease's defined terms make clear that the 25th anniversary of the Rent Commencement Date is not a Reappraisal Date. It is the First Appraisal Date. The earliest Reappraisal Date is not until 10 years later, i.e., the 35th anniversary of the Rent Commencement Date. Section 3.2 (e) (i), from which the definitions of these terms are taken, specifically distinguishes the First Appraisal Date from "any Reappraisal Date." Had the parties intended that the fair market value be calculated according to section 3.2 before the First Appraisal Date, "it would have been easy to specify" as much (Waldman v Riedinger, 423 F3d 145, 150 [2d Cir 2005]; see also e.g. MAK Tech. Holdings, _NY3d_, 2024 NY Slip Op 03376, *3). Similarly, they could have, but did not invoke the defined term Initial Fair Market Value, which refers to the value set forth in section 3.2 prior to the First Appraisal Date (Waldman, 423 F3d at 150).
The City concedes, however, that the Lease does not set forth a valuation process for a purchase before the period set forth in Section 12.2 (c) (i) (A). Therefore, even if we were to adopt the City's interpretation of that section, the Lease would not provide for calculation of the value from the 10th anniversary of the Rent Commencement Date until the earliest Reappraisal Date. "In short, neither party has established that its interpretation of the relevant contracts is correct as a matter of law" (NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 61 [1st Dept 2008]).
The City contends that the parties intended for the purchase price to be set via separate appraisal, as it would be after the period in Section 12.2 (c) (i) (A), and asks us to supply terms to effect this intention (see Federal Ins. Co. v Americas Ins. Co., 258 AD2d 39, 44 [1st Dept 1999]; see also Castellano v State of New York, 43 NY2d 909, 911 [1978]). On summary judgment, however, we cannot say that this is the unmistakable intent expressed by either the Lease or the mayoral authorization of the purchase option. Neither can we resolve the parties' dispute as to which interpretation is more commercially reasonable. "Nor does the limited, conflicting parol evidence submitted by the parties eliminate the ambiguity in the agreements" (NFL Enters., 51 AD3d at 61). We therefore deny the parties' motions for summary judgment.
Finally, Supreme Court should [*3]not have dismissed the City's second counterclaim for a declaratory judgment regarding a scheduled rent adjustment. Section 12.2 (c) (iii) of the Lease provides for an adjournment of the closing when the parties dispute the
price of the purchase option, without providing for any changes to the rent calculation schedule. The parties' stipulation freezes rent during the litigation but does not preclude
a retroactive rent increase afterwards. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: November 14, 2024

Footnotes

Footnote 1: The definition of "Fair Market Value," unlike the other defined terms at issue, is unambiguously confined to section 3.2. Moreover, the term "fair market value" used in section 12.2 (c) (i) is undefined.