# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 38
Skanska USA Building Inc.,
  Appellant,
  v.
Atlantic Yards B2 Owner, LLC,
et al.,
  Respondents,
et al.,
  Defendants.

Bruce Meller, for appellant.
Harold P. Weinberger, for respondents.
Associated General Contractors of New York State, LLC; New York State Urban Development Corporation, et al., <u>amici</u> <u>curiae</u>.

MEMORANDUM:

  The order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and the certified question answered in the affirmative. We conclude that the courts below properly dismissed plaintiff Skanska USA Building Inc.'s claim that

- 1 -

defendant Atlantic Yards B2 Owner, LLC (B2 Owner) breached the Construction Management and Fabrication Services Agreement (the CM Agreement) by allegedly failing to comply with Lien Law § 5. Plaintiff failed to allege the existence of any provision in the CM Agreement requiring compliance with that statute.

In July 2006, the New York State Urban Development Corporation d/b/a Empire State Development (ESD), a public benefit corporation, adopted a plan for Atlantic Yards, a 22-acre mixed-use development project in Brooklyn. ESD, which is not a party to this action, entered into a Development Agreement with non-party entities affiliated with B2 Owner to develop the project site. ESD also entered into a Lease Agreement with FC Atlantic Yards B2, LLC (Tenant), another non-party affiliate of B2 Owner, to lease a parcel of land within the Atlantic Yards site to Tenant. Under the Lease Agreement, Tenant agreed that certain buildings would be constructed on the leased premises, including the B2 Building, a proposed 34-floor residential high-rise. Plaintiff is not a party to either the Development Agreement or the Lease Agreement. Those agreements required Tenant to "satisfy all requirements of Section 5 of the New York State Lien Law . . . as such requirements and law are interpreted from time to time by [ESD]." Pursuant to the terms of the Lease Agreement, non-party Forest City Enterprise, Inc. (FCE), a minority owner of B2 Owner, made a Guaranty in favor of ESD which, among other things, guaranteed Tenant's completion of the construction work and that Tenant would use all monies disbursed by the lender to pay all costs, expenses, and liabilities — including construction costs — incurred in connection with the guaranteed work.

Plaintiff and B2 Owner separately entered into the CM Agreement, pursuant to which plaintiff agreed to construct the B2 Building in exchange for approximately $116 million. B2 Owner issued to plaintiff a "Notice to Proceed" under the CM Agreement, setting the substantial completion deadline for the B2 Building. Construction was delayed for reasons disputed by the parties. After the deadline passed, plaintiff sent B2 Owner a notice of its intent to terminate the CM Agreement asserting, among other things, that B2 Owner breached the CM Agreement by failing to post a bond or undertaking in violation of Lien Law § 5. That statute provides, in relevant part, that where there is no public fund to finance a public improvement with an estimated cost in excess of $250,000, "the chief financial officer of the public owner shall require the private entity for whom the public improvement is being made to post, or cause to be posted, a bond or other form of undertaking guaranteeing prompt payment of moneys due to the contractor, his or her subcontractors and to all persons furnishing labor or materials" (Lien Law § 5).

Plaintiff subsequently stopped work on the B2 Building and purported to terminate the CM Agreement. Thereafter, plaintiff commenced this action against B2 Owner and Forest City Ratner Companies, LLC (FCRC), asserting, among other things, a claim for breach of the CM Agreement premised on B2 Owner's alleged failure to comply with Lien Law § 5.[1] Defendants moved to dismiss that claim pursuant to CPLR 3211 (a) (1) and (7), and Supreme Court granted the motion.

---

[1] FCRC is an affiliate of B2 Owner, which developed the modular construction concept that was to be used to erect the B2 Building. It was not a party to the CM Agreement.

Upon plaintiff's appeal, the Appellate Division, with two Justices dissenting in part, modified and, as so modified, affirmed (146 AD3d 1 [1st Dept 2016]). As relevant here, the Appellate Division affirmed the dismissal of plaintiff's contract claim based on the alleged violation of Lien Law § 5.[2] The Court held that the Guaranty issued by FCE satisfied the mandate of section 5, while the dissenting Justices would have held that the Guaranty did not qualify as an "other form of undertaking" within the meaning of the statute. The Appellate Division granted plaintiff leave to appeal, certifying the question of whether its order was properly made.

It is axiomatic that, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; see Reiss v Financial Performance Corp., 97 NY2d 195, 198 [2001]). In that regard, "[c]ourts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 581 [2017]). "We have . . . emphasized this rule's special import 'in . . . context[s] . . . where commercial certainty is a paramount concern, and where . . . the instrument [at issue] was negotiated between sophisticated . . . business people . . . at arm's length'" (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004], quoting Matter of Wallace v 600 Partners Co., 86 NY2d 543, 548 [1995]).

---

[2] The Appellate Division also affirmed Supreme Court's denial of plaintiff's motion to disqualify defendants' counsel.

Plaintiff's complaint does not identify which, if any, provision or provisions of the CM Agreement between plaintiff and B2 Owner were purportedly breached. Unlike the Development and Lease Agreements — to which plaintiff is not a party — the CM Agreement contains no express provision requiring compliance with the Lien Law. Plaintiff nevertheless maintains that section 5 of the Lien Law should be "read into" the CM Agreement because the contract is governed by New York law. Specifically, plaintiff points to section 17.3 of the CM Agreement, which provides that "[t]he construction, validity and performance of [the CM Agreement] shall be exclusively governed by the laws of the State of New York, excluding any provisions or principles thereof which would require the application of the laws of a different jurisdiction." However, this is a typical choice-of-law provision that we do not read as imposing a contractual obligation here. The mere fact that an agreement, and disputes arising thereunder, are governed by the law of a particular jurisdiction does not transform all statutory requirements that may otherwise be imposed under that body of law into <u>contractual</u> obligations, and we decline to interpret the CM Agreement as "impliedly stating something which [plaintiff and B2 Owner] have neglected to specifically include" (<u>Vermont Teddy Bear</u>, 1 NY3d at 475, quoting <u>Rowe v Great Atl. & Pac. Tea Co.</u>, 46 NY2d 62, 72 [1978]; <u>see</u> <u>also</u> <u>Goncalves v Regent Intl.</u>, 58 NY2d 206, 220 [1983]).

Accordingly, plaintiff's claim that B2 Owner breached the CM Agreement by failing to comply with section 5 of the Lien Law was properly dismissed. We, therefore, have no occasion to pass on, and the Appellate Division did not need to reach, the merits

of the parties' arguments concerning either the interpretation of that statute or whether the

Guaranty satisfied its mandate.  Plaintiff's remaining arguments lack merit.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order insofar as appealed from affirmed, with costs, and certified question answered in the
affirmative, in a memorandum.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey,
Wilson and Feinman concur.  Judge Garcia took no part.

Decided April 26, 2018