St. George Outlet Development, LLC and EMPIRE OUTLET BUILDERS LLC, Plaintiffs,

against
Casino Mechanical Corp. and TRACY DAMANTE, Defendants.


655571/19

Plaintiffs were represented by: Donald F. Schneider, Silverman Shin Byrne PLLC, Wall Street Plaza, 88 Pine Street, New York, NY 10005 (212) 779-8600 dschneider&commat;silverfirm.com
Defendants were represented by Keith M. Casella, Casella & Casella, LLP, 1794 Richmond Road, Staten Island, NY 10306 (718) 979-1137 email&commat;casellalawfirm.com


Barry Ostrager, J.

Before the Court is a motion by plaintiffs St. George Outlet Development, LLC ("St. George") and Empire Outlet Builders LLC ("Empire") (together, "plaintiffs") for an order pursuant to CPLR §§ 321l(a)(1) and (7) dismissing certain of the counterclaims asserted against them by defendants Casino Mechanical Corp. ("Casino") and its representative Tracy Damante ("Damante") (together, "Casino") based on documentary evidence and failure to state a cause of action. Specifically, plaintiffs seek to dismiss the Second, Fourth and Seventh Counterclaims and parts of the Fifth and Sixth Counterclaims and/or the Sixth Counterclaim in its entirety. For the reasons stated below, the motion is granted and the designated counterclaims are dismissed.
Background Facts
St. George is the Lessee of real property known as and located at 55B Richmond Terrace, Staten Island, NY (the "Property"). The Property is being developed as part of the St. George Waterfront Redevelopment Project (the "Project"), intended to "transform the currently underutilized St. George Waterfront into a dynamic, mixed-use destination ... and a high-end outlet retail complex..." See https://www.nycedc.com/project/st-george-waterfront. The Property is owned by the City of New York ("the City"), which leased the Property to St. George for 49 years (see December 27, 2013 Memorandum of Lease, NYSCEF Doc. No. 9).
In connection with the Lease for the Property, three representatives of St. George — [*2]Donald Capoccia, Joseph Ferrara, and Brandon Baron  executed two Standby Completion Guarantees on April 1, 2015 (collectively the "Standby Guaranty") which guaranteed the substantial completion of construction at the Project in accordance with the Lease and approved development plans and that any liens placed on the Property would be removed or discharged (NYSCEF Doc. No. 10).[FN1]
St. George also executed a lengthy Funding Agreement with the New York City Economic Development Corporation ("EDC") dated September 26, 2016, wherein St. George agreed to provide payment and performance bonds in favor of the EDC in connection with the performance of certain construction work related to the Project (the "Funding Agreement") (NYSCEF Doc. No. 11).
St. George entered into a general construction contract with co-plaintiff Empire, dated November 5, 2014 (NYSCEF Doc. No. 12). Empire, in turn, entered into three Subcontracts with defendant Casino in the Spring of 2016 regarding the retail facility, the garage facility, and the Staten Island Rapid Transit Operating Authority facility, which together totaled nearly thirteen million dollars. (NYSCEF Doc. No. 13). Casino was hired to provide work, labor and services in connection with the development of the Property, and its alleged failure to properly perform that work, labor and services is the subject of this action. Plaintiffs in their Complaint alleged seven causes of action, all largely related to purported breaches of the Subcontracts and fraud (NYSCEF Doc. No. 2). Defendants in their Answer asserted seven counterclaims alleging breach of contract, account stated, and various statutory claims under the General Business Law and the Lien Law (NYSCEF Doc. No. 4). Only those challenged in this motion will be discussed below.
Discussion 
"On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction We accept the facts as alleged in the [counterclaims] as true, accord [counterclaim] plaintiffs the benefit of every possible favorable inference, and determine [under CPLR 3211(a)(7)] only whether the facts as alleged fit within any cognizable legal theory .Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law . ". Leon v Martinez, 84 NY2d 83, 87-88 (1994) (citations omitted).
Plaintiffs first seek to dismiss the Second Counterclaim, which alleges an Account Stated against Empire in the amount of $1,623,686.08 based on invoices purportedly sent and not challenged as incorrect within a reasonable time [see Russo v Heller, 80 AD3d 531, 532 (1st Dep't 2011), quoting Bartning v Bartning, 16 AD3d 249 (1st Dep't 2011) (an account stated "exists where a party to a contract receives bills or invoices and does not protest within a reasonable time")]. Empire seeks to dismiss the Account Stated Counterclaim as duplicative of the First Counterclaim for Breach of Contract, which demands the exact same amount of money, citing cases such as Professional Merchant Advance Capital, LLC. v C. Care Services, LLC, 2015 WL 4392081 (SDNY July 15, 2015) (dismissing account stated claim as duplicative of breach of contract claim because there was an enforceable agreement and both claims sought the same damages) and Hagman v. Swenson, 149 AD3d 1, 4 (1st Dep't 2017) ("Since defendants do not dispute the existence of the interior design contract, or that the contract covers the issues at [*3]hand the account stated claim was correctly dismissed" as duplicative of the breach of contract claim).
Casino in its opposition disputes that the counterclaims are duplicative, contending that the Subcontracts included specific amounts whereas the Account Stated claim is based on change orders and adjustments to the Subcontract prices included in invoices. However, as Casino cannot reasonably dispute that the written Subcontracts include a procedure for change orders and that the Account Stated claim covers the same issues and damages as the Breach of Contract claim, the Second Counterclaim sounding in Account Stated must be dismissed as duplicative of the First Counterclaim.
Plaintiffs next seek dismissal of the Fourth and Seventh Counterclaims, both of which claim violations of Lien Law § 5. The Fourth Counterclaim is based on the alleged failure by St. George to provide a bond or other form of undertaking pursuant to the statute. The Seventh Counterclaim, asserted against both St. George and Empire, contends that since the Project is a public improvement for a private entity (St. George), the law requires that a bond or undertaking be posted to guarantee payments to subcontractors, who have a private right of action under the Lien Law. Both Counterclaims seek damages in the same amount as the Breach of Contract Counterclaim.
The Court agrees with St. George that the Fourth Counterclaim must be dismissed. The provision Casino relies on expressly extends only to a contract with a "public owner", and St. George is undeniably a private entity. Casino does not dispute the statute refers to a "public owner" but urges the Court to infer a private right of action, as other sections of the Lien Law provide for such a right. However, the Court cannot rewrite the statute as Casino urges it to do. Further, Casino's reliance on Sheehy v Big Flats Community Day, 73 NY2d 629, 633 (1989) to claim a private right of action is misplaced, as the issue there was whether a private right of action for civil damages could be inferred from a Penal Law statute criminalizing the sale of alcohol to underage minors.
Plaintiffs additionally seek to dismiss the Seventh Counterclaim, which demands a judgment against St. George and its nonparty principals, jointly and severally, for the same amount sought in the Breach of Contract Counterclaim; i.e., $1,623,686.08.[FN2]
 The Seventh Counterclaim alleges the Standby Completion Guaranty and Funding Agreement are "the equivalent of a Lien Law Section 5 bond or other form of undertaking" and that Casino is entitled to payment under the statute as either a direct or third-party beneficiary of those Guarantees. Lien Law § 5 provides in relevant part (with emphasis added) that:
Where no public fund has been established for the financing of a public improvement with an estimated cost in excess of two hundred fifty thousand dollars, the chief financial officer of the public owner shall require the private entity for whom the public improvement is being made to post, or cause to be posted, a bond or other form of undertaking guaranteeing prompt payment of moneys due to the contractor, his or her subcontractors and to all persons furnishing labor or materials to the contractor or his or her subcontractors in the prosecution of the work on the public improvement.
No basis exists for Casino's third-party beneficiary claim, plaintiffs argue. Citing LaSalle Natl .Bank v Ernst & Young, 285 AD2d 101, 108 (1st Dep't 2001), plaintiffs assert that to qualify for third-party rights, Casino must be an intended, not an incidental, beneficiary, such that the performance of the promise in the Guaranty satisfies the obligation of the promisee (the City or the EDC) to pay money to the third-party beneficiary (not relevant here), or the circumstances show that "the promisee intends to give the beneficiary the benefit of the promised performance ." Such is not the case here, where § 2.3 of the Standby Guaranty states the clear intent is to benefit solely the City of New York, and § 18.04 of the Funding Agreement states the clear intent is to benefit solely the EDC. See also Dormitory Auth. of the State of New York v Samson Constr. Co., 30 NY3d 704, 710 (2018) (in determining a third-party beneficiary claim related to a construction contract, where performance ultimately benefits all parties involved, New York courts have "generally required express contractual language stating that the contracting parties intended to benefit a third party by permitting that third party 'to enforce [a promisee's] contract with another'. In the absence of such express language, 'third parties are generally considered mere incidental beneficiaries' [with no third-party rights]" (internal citations omitted).
Casino in opposition places great weight on the legislative history of Lien Law § 5, arguing the statute was amended in 2004 to fill a "gap" to protect subcontractors on projects, similar to the Project here, being built by private developers with private funds, but on public land, such that the subcontractor cannot file a lien against the public land or the private entity's leasehold interest. See also, Skanska USA Bldg. Inc. v Atlantic Yards B2 Owner, LLC, 146 AD3d 1, 8-9 (1st Dep't 2016), aff'd in part 31 NY3d 1002 (2018) (relying on legislative history to find that a construction contract guaranty was the equivalent of a Lien Law § 5 "bond or other form of undertaking"). According to Casino, construing Section 5 to provide financial protection to subcontractors, like Casino, is consistent with Lien Law § 23, which provides that the Law "is to be construed liberally to secure the beneficial interests and purposes thereof."
For further support, Casino cites New York State Senate Introducer's Memorandum In Support of the amendment, which states that: "This amendment would allow a contractor, subcontractor or materialman, who has been denied his lien rights [based on the public nature of the land] to file a claim against the payment bond or undertaking." (NYSCEF Doc. No. 29 &commat; 000007). To hold otherwise, would mean that St. George was not required to post a bond or other form of undertaking guaranteeing prompt payment to subcontractors on this Project on publicly owned land, despite the intent of the Lien Law that private developers building projects with private funds, but on public land, provide financial protection to subcontractors working on these projects, Casino asserts.
As to the language of the Guaranty itself, Casino points to Section 2.1, which begins by stating (with emphasis added) that: "The Guarantors do hereby absolutely, unconditionally and irrevocably, as primary obligors and not merely as sureties, guarantee to the City and its successors, transferees and assigns the prompt payment and performance of the following obligations " In reply, plaintiffs argue that Casino has misread the Standby Completion Guaranty, noting that the remainder of the cited Section 2.1 explains the payment and performance obligations, expressly providing that the individual Guarantors, on behalf of St. George, guarantee to the City of New York three things: (a) "Substantial Completion" in accordance with plans and specifications [the "Completion Obligation," Section 2.1(a)]; (b) the bonding or other removal of all liens [the "Lien Discharge Obligation," Section 2.1(b)]; and (c) [*4]payment to the City of New York of its reasonable costs and expenses in enforcing the Completion Obligation and the Lien Discharge Obligation [the "Enforcement Costs Obligation," Section 2.1(c)]. Nowhere does the Guaranty guarantee "prompt payment" to contractors, as Casino contend, plaintiffs argue.
For those reasons, plaintiffs distinguish their Guaranty from the guaranty in Skanska USA, relied on by Casino, which expressly required a private entity "to fully and punctually pay ... any and all costs, expenses and liabilities incurred for or in connection with the Guaranteed Work, including but not limited to, the costs of constructing, equipping and furnishing the Guaranteed Work." 146 AD3d at 10. Plaintiffs further point to the decision by the Court of Appeals in Skanska USA wherein the Court emphatically declined to read the requirements of Lien Law § 5 into the construction contract, which included no provision mandating compliance with that statute, reasoning that courts may not add or excise provisions of an otherwise clear contract. 31 NY3d at 1006-1007. The Court of Appeals therefore affirmed the dismissal of the claim that the owner had breached the construction contract by failing to comply with Lien Law § 5, but it expressly declined to reach the merits of the parties' arguments concerning either the interpretation of that statute or whether the Guaranty satisfied its mandate. Since the contract here includes no language imposing any obligation on St. George pursuant to Lien Law § 5, the Court finds the Seventh Counterclaim fails to state a cause of action and must be dismissed.
Plaintiffs next seek to dismiss those portions of the Fifth and Sixth Counterclaims that allege larceny pursuant to Lien Law § 79-a and punitive damages. Lien Law § 79-a covers the misappropriation of Trust Funds and does indicate when misconduct constitutes larceny. However, "not every violation of [the statute] constitutes the criminal offense of larceny [T]he Lien Law does not create a strict liability crime, and therefore a conviction of larceny by misappropriation of trust funds pursuant to Lien Law § 79-a requires proof of larcenous intent." ARA Plumbing & Heating Corp. v Abcon Assoc., Inc., 44 AD3d 598 (2nd Dep't 2007). Not even the application of the liberal pleading standard urged by Casino justifies allowing the larceny allegations to proceed.
Similarly, the Counterclaims lack sufficient allegations of "spite or malice, or a fraudulent or evil motive on the part of the [counterclaim] defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton" so as to support the request for punitive damages. Marinaccio v Town of Clarence, 20 NY3d 506, 511 (2013), quoting Dupree v Giugliano, 20 NY3d 921, 924 (2012). This action simply involves nonpayment of sums allegedly due under three Subcontracts. Therefore, both the larceny and punitive damages allegations in the Fifth and Sixth Counterclaims are stricken.
Plaintiffs also seek to dismiss the Sixth Counterclaim in its entirety as duplicative of the Fifth. The Fifth Counterclaim seeks an accounting of the Trust Funds and recovery of $1,623,686.08 pursuant to Article 3-A of the Lien Law. The Sixth Counterclaim repeats the allegations in the Fifth and merely adds an allegation of breach of fiduciary duty. As both claims are based on the same facts and seek the same damages, the Sixth is duplicative of the Fifth. As Casino did not oppose plaintiffs' request for dismissal or even address it, its Sixth Counterclaim must be deemed abandoned. Gary v Flair Beverage Corp., 60 AD3d 413 (1st Dep't 2009) ("plaintiff's failure to address this issue in its responding brief indicates an intention to abandon this basis of liability ) (internal citation omitted). Accordingly, the Sixth Counterclaim is dismissed as duplicative of the Fifth Counterclaim and as abandoned by Casino.
Accordingly, it is hereby
ORDERED that the motion by plaintiffs St. George Outlet Development, LLC and Empire Outlet Builders LLC ("Empire") for an order pursuant to CPLR §§ 321l(a)(1) and (7) dismissing certain of the counterclaims asserted against them by defendants Casino Mechanical Corp. and its representative Tracy Damante is granted to the extent provided herein, and the Clerk is directed to sever and dismiss the Second, Fourth, Sixth, and Seventh Counterclaims in their entirety, as well as the allegations in the Fifth Counterclaim claiming larceny and requesting punitive damages, and the remaining Counterclaims shall proceed; and it is further
ORDERED that plaintiffs shall efile a Reply to Counterclaims by June 1, 2020. The parties shall thereafter confer and agree upon reasonable discovery deadlines, complete and efile the Preliminary Conference Order form available on the Part 61 website, with a Note of Issue due 22 months after the date of the Order and a compliance conference set for September 22, 2020 at 9:30 a.m.(http://ww2.nycourts.gov/courts/comdiv/ny/newyork_judges_links.shtmlNo.ostrager).
The parties are also urged to pursue mediation of this dispute and to contact the Court via email pursuant to the Temporary Part 61 Rules for a remote settlement conference.
Date May 6, 2020
BARRY R. OSTRAGER, J.S.C.



Footnotes

Footnote 1:The first Standby Guaranty related to Phases 1 and 2 of the Project and the second related to Phase 3.

Footnote 2:The demand for judgment against the principals is in ¶ 118 of the Counterclaim, although the title of the Seventh Counterclaim references St. George and Empire only.